**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| JOHN STANTON, et al., | : |
|  | : CIVIL ACTION NO. 10-5658 (MLC) |
| Plaintiffs, | : |
|  | : **MEMORANDUM OPINION** |
| v. | : |
|  | : |
| GREENSTAR RECYCLED HOLDINGS, L.L.C., et al., | : |
|  | : |
| Defendants. | : |

**COOPER, District Judge**

Plaintiffs, John Stanton and Harv Straus (collectively, "Plaintiffs"), commenced this action in New Jersey Superior Court against defendants, Greenstar Recycled Holdings, L.L.C. ("GRH") and Greenstar, LLC ("Greenstar" and collectively with GRH, "Defendants"), alleging claims for breach of contract with respect to Plaintiffs' employment agreements and seeking a judgment declaring that restrictive covenants contained in the employment agreements are unreasonable, unduly burdensome and not enforceable.  (Dkt. entry no. 1, Rmv. Not., Ex. A, Compl.)  On March 31, 2011, the District Court granted Defendants' motion to dismiss with prejudice parts of the Complaint, and remanded the action to state court.  (Dkt. entry no. 16, 3-31-11 Mem. Op.; dkt. entry no. 17, 3-31-11 Order.)  The Court, on a motion for reconsideration, subsequently vacated the 3-31-11 Order, and

granted Plaintiffs leave to re-plead Counts I-IV in an amended pleading.  (Dkt. entry no. 23, 8-29-11 Order.)

This action was reassigned to the undersigned on December 27, 2011.  (Dkt. entry no. 31, 12-27-11 Order Reassigning Case.)  On January 18, 2012, Plaintiffs filed the Second Amended Complaint, which asserts the four counts contemplated by the 8-29-11 Order vacating the dismissal of certain claims with prejudice:  (1) breach of contract - failure to pay two-year bonuses; (2) breach of contract - failure to pay five-year bonuses; (3) breach of contract - failure to provide vacation pay to John Stanton; and (4) declaratory judgment - restrictive covenants.  (Dkt. entry no. 36, 2d Am. Compl.)

Defendants now move to dismiss Count 1 insofar as it alleges breach of contract for failure to pay a "$25,000 single stream bonus," and Count 2 in its entirety, for failure to state a claim on which relief can be granted, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  (Dkt. entry no. 37, Mot. Dismiss & Def. Br. at 2-3.)  Defendants also move to dismiss Count 4 insofar as it is asserted by Straus for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), on the basis that the restrictive covenant challenged in that claim has expired and thus there is no case or controversy requiring resolution.  (Def. Br. at 2-3.)

The Court decides the motion on the submissions of the parties, without oral argument, pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, the Court will deny the motion with respect to Count 1 and Count 2, and grant the motion with respect to Count 4. Furthermore, the Court will <u>sua sponte</u> consider the question of mootness of Count 4 with respect to Stanton, and dismiss that claim with respect to both Plaintiffs.

## I.  Background - Employment Agreements

Stanton and Straus were principals of Global Recycling Solutions, LLC ("Global"), which was acquired pursuant to an asset purchase agreement ("APA") by Greenstar New Jersey, LLC, in July 2008. (2d Am. Compl. at ¶ 7.) The acquisition included Global's recycling operations at the Monmouth County Reclamation Center ("MCRC"). (<u>Id.</u> at ¶ 9.) By the terms of the APA, Plaintiffs entered into Employment Agreements with Recycled Holdings, LLC, to assist with the transition, including operations at MCRC. (<u>Id.</u> at ¶¶ 10-11 & Ex. A, Stanton Employment Agreement; Ex. B, Straus Employment Agreement ("Employment Agreements").) Recycled Holdings, LLC, was subsequently acquired by GRH, and became a subsidiary of Greenstar. (2d Am. Compl. at ¶¶ 16-17.) Thus, GRH is now party to Plaintiffs' 2008 Employment Agreements. (<u>Id.</u> at ¶ 17; Def. Br. at 4.)

**A.    Bonus Provisions**

The Employment Agreements contained provisions conditioning Plaintiffs' receipt of certain "Special Bonuses" upon meeting specified performance milestones. (2d Am. Compl. at ¶ 35.) The "Two-Year Milestones" established that Plaintiffs would receive (1) a $25,000 bonus for the installation of "single stream" recycling at MCRC ("single stream bonus"); (2) a $25,000 bonus for achieving a Total Recordable Incidence Rate below five at MCRC; and (3) a $75,000 bonus for Plaintiffs' reaching a volume of 500 tons per month of net new business since January 1, 2008. (Id.)[1] The "Five-Year Milestones" provided for (1) a $75,000 bonus if Plaintiffs achieved a volume of 1,500 tons per month of net new business since January 1, 2008 ("tonnage bonus"); and (2) a $50,000 bonus if Plaintiffs successfully obtained a new five-year contract with Monmouth County ("renewal bonus"). (Id.)

Count 1 of the Second Amended Complaint alleges that Defendants breached the Employment Agreement by refusing to pay each of the two-year bonuses. (Id. at ¶ 153.) Specifically with respect to the single stream bonus, Plaintiffs allege that "Defendants intentionally frustrated the intent of the Employment Agreements by making it impossible for Stanton and Straus to

---

[1] "Single stream" recycling refers to recycling technology that allows consumers to collect all their recyclables in one container for collection and processing, as opposed to requiring consumers to separate recyclables by type of material. (2d Am. Compl. at ¶ 32.)

achieve this bonus by, among other things, not installing the Single Stream screen . . . even after purchasing it for the MCRC but then intentionally and in bad faith divert[ing] it to another facility." (Id. at ¶ 150.) Plaintiffs allege in Count 2 that Defendants breached the Employment Agreement by refusing to pay each of the five-year bonuses. (Id. at ¶ 166.) With respect to the tonnage bonus, Plaintiffs allege that they met the milestone as of 2010, and "are entitled to that payment within 60 days of the Five Year Milestone Date." (Id. at ¶ 163.) With respect to the renewal bonus, Plaintiffs allege that "by rejecting the New Global County Contract . . . [Defendants] intentionally and in bad faith unfairly frustrated the bonus provisions of the Employment Agreements by making it impossible and/or impracticable for [Plaintiffs] to achieve" the renewal bonus. (Id. at ¶ 165.)

    **B.**   **Non-Competition Covenants**

The Employment Agreements also contained "non-competition covenants," prohibiting Plaintiffs from engaging in certain business practices for a two-year period following the date of termination of their employment from GRH anywhere within 200 miles of any GRH facility (Stanton) or within 100 miles of such facility (Straus). (Id. at ¶¶ 24-29.)

Straus was terminated without cause from GRH effective June 26, 2009. (Id. at ¶ 71.) Stanton was terminated without cause

5

from GRH effective June 21, 2010.  (Id. at ¶ 74.)  In Count 4, Plaintiffs seek a judgment declaring that the non-competition covenants are null and void because they do not protect a legitimate interest of Defendants, impose an undue hardship on Plaintiffs, and injure the public interest.  (Id. at ¶ 186.)

## II.  Motion to Dismiss Standard

### A.  Rule 12(b)(6)

In addressing a motion to dismiss a complaint under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine, whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). At this stage, a "complaint must contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--that the 'pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Rule 8(a)(2)).

The Court, in evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, may consider the complaint, exhibits attached thereto, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). The Employment Agreements are attached to the Second Amended Complaint and provide the basis for Plaintiffs' claims, and will be considered by the Court in deciding the motion.

**B.   Rule 12(b)(1)**

A motion to dismiss an action under Rule 12(b)(1) raises the question of the Court's subject matter jurisdiction over the action. A complaint must be dismissed for lack of subject matter jurisdiction if no "case or controversy" exists, as required by Article III of the United States Constitution. Cospito v. Califano, 89 F.R.D. 374, 379 (D.N.J. 1981) (citing Baker v. Carr, 369 U.S. 186, 198 (1962)). Defendants' challenge to the Court's subject matter jurisdiction over Count 4, pertaining to the enforceability of the non-competition covenants, constitutes a facial attack "directed to the sufficiency of the pleading as a basis for subject matter jurisdiction," and therefore the Court must accept the allegations in the Second Amended Complaint as true for purposes of resolving the motion. See Duruaku v. BB&T Bank, No. 05-5285, 2006 WL 1805887, at *2 (D.N.J. June 29, 2006).

A claim fails to present a case or controversy and is constitutionally moot where "it is impossible for the court to grant any effectual relief." Church of Scientology of Cal. v. United States, 506 U.S. 9, 12 (1992). "To avoid mootness, a claim must (1) present a real legal controversy, (2) genuinely affect an individual, and (3) have sufficiently adverse parties." Cinicola v. Scharffenberger, 248 F.3d 110, 118-19 (3d Cir. 2001).

**III. Analysis**

    **A.    Count 1 - Two-Year "Single Stream" Bonus**

Count 1 of the Second Amended Complaint alleges, inter alia, that "Plaintiffs are entitled to the $25,000 Single Stream two-year bonus because Defendants . . . [made] it impossible for Stanton and Strauss to achieve this bonus by . . . not installing the Single Stream screen." (2d Am. Compl. at ¶ 150.) They further state that "Defendants unforeseeably failed to install the screen even after purchasing it for the MCRC." (Id.) To state such a claim, Plaintiffs must plead (1) a contract, (2) a breach of the contract, (3) damages resulting from the breach, and (4) that the party alleging the breach performed its own contractual duties. Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc., 210 F.Supp.2d 552, 561 (D.N.J. 2002).

Defendants contend that as a matter of contract law, Plaintiffs have failed to state a claim with respect to the single stream bonus because they admit that they did not satisfy

the condition precedent contained in the Employment Agreements of installment of the single stream technology at MCRC.  (Def. Br. at 8; 3-31-11 Mem. Op. at 7; dkt. entry no. 20, Pl. Br. Supp. Mot. for Reconsideration at 7 n.3 ("Plaintiffs have not achieved the remaining two-year milestone requiring installation of a single stream recycling screen because Defendants diverted the screen from the MCRC to another Greenstar facility outside of New Jersey.").)  They further argue that nothing in the Employment Agreements required GRH to install such a screen regardless of whether one had been obtained.  (Def. Br. at 8; see also Employment Agreement at Section 3.1(d)(I);.)  Plaintiffs respond that they have alleged a viable claim because the fact that the screen was not installed at MCRC was due to the bad faith of Defendants.  (Dkt. entry no. 40, Pl. Br. at 9.)

A covenant of good faith and fair dealing is implied in every contract in New Jersey, and implied covenants are as effective components of an agreement as those that are express. Wilson v. Amerada Hess Corp., 168 N.J. 236, 244 (2001); see also Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 421 (1997) ("In every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.").  Where a contract vests one party with discretion, that party "must exercise discretion reasonably and

9

with proper motive," not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectation of the parties.  Wilson, 168 N.J. at 247, 251.

The Court finds that Plaintiffs' allegations regarding the reason for their inability to satisfy the condition precedent allow this claim to survive the motion to dismiss.  Although the 3-30-11 Opinion dismissed Count VI of the Amended Complaint, which alleged a stand-alone claim for breach of the implied covenant of good faith and fair dealing, it did not address the single stream bonus in doing so.  (3-30-11 Mem. Op. at 8-9.) Defendants analogize to the contract renewal bonus in arguing that the single stream bonus reserved discretion to GRH with respect to installation of the single stream screen, by the Employment Agreements' specification that such screen must be installed "to the company's satisfaction."  (Def. Br. at 8.) However, the Court finds that a reading of the Employment Agreements indicates that the parties all expressly contemplated that the single stream screen would be installed at MCRC, notwithstanding the "to the company's satisfaction" language, and Plaintiffs have alleged that Defendants "intentionally frustrated the intent of the Employment Agreements by making it impossible for [Plaintiffs] to achieve this bonus by . . . not installing the Single Stream screen. . . . [and] divert[ing] it to another facility."  (2d Am. Compl. at ¶ 150.)  Furthermore, as noted

above, it is incumbent on a party vested with discretion to exercise such discretion in a reasonable manner, and Plaintiffs have alleged that Defendants failed to do so.  See Wilson, 168 N.J. at 251 (stating that the implied covenant of good faith and fair dealing is breached where "a party exercising its right to use discretion . . . exercises its discretionary authority arbitrarily, unreasonably, or capriciously, with the objective of preventing the other party from receiving its reasonably expected fruits under the contract.").

The Court will therefore deny the motion insofar as it seeks to dismiss with prejudice the part of Count 1 pertaining to the $25,000 single stream bonus.  The claims for the other two-year bonuses set forth in the Employment Agreements also remain pending in Count 1.

    **B.    Count 2 - Five-Year Bonuses**

Count 2 of the Second Amended Complaint asserts a breach of the Employment Agreements' promise to pay two separate five-year bonuses conditioned on certain milestones being met.  (2d Am. Compl. at ¶ 166.)  Defendants contend that Count 2 insofar as it pertains to the $50,000 county contract renewal bonus must be dismissed because it is undisputed that the Plaintiffs did not achieve that milestone; Plaintiffs concede that the contract was never renewed.  (Def. Br. at 9.)  Defendants further argue that Count 2 insofar as it concerns the $75,000 tonnage bonus must be

11

dismissed because the Employment Agreements clearly and unambiguously state that whether the tonnage condition precedent has been satisfied "is to be determined on July 2, 2013." (Id. at 12.)

Plaintiffs respond that they have pleaded that they achieved the tonnage bonus as of sometime in 2010, and that the Employment Agreements expressly contemplate that the five-year bonuses are payable if achieved "prior to" the "Five-Year Milestone Date." (2d Am. Compl. at ¶¶ 163-65; Pl. Br. at 16-20.)  They further argue that the renewal bonus was not met because the Defendants, in bad faith, refused to execute the renewal contract, and furthermore that the Employment Agreements only require that Plaintiffs "obtain" such renewal contract, not that GRH actually execute it.  (Pl. Br. at 20-21.)

### 1.  **Tonnage Bonus**

The Court finds that the interest in judicial efficiency counsels against dismissal without prejudice of the part of Count 2 asserting a breach of the Employment Contracts insofar as Defendants refuse to pay the tonnage bonus.  The plain language of the Employment Agreements indicates that the five-year bonuses are not payable until "within 60 days after the fifth anniversary of" the date of execution of the Employment Agreements, or July 2, 2013.  (Employment Agreement at Section 3.1(ii).)  However, such bonuses are ultimately payable at such time if either

12

milestone was "achieved on or prior to" that date, and Plaintiffs have alleged facts supporting their claim that they achieved the condition precedent to being paid the tonnage bonus sometime in 2010.  (2d Am. Compl. at ¶¶ 159-64.)  There is no indication in the record that Defendants have any intention of paying Plaintiffs the tonnage bonus, insofar as they deny that Plaintiffs satisfied the threshold that would entitle them to the tonnage bonus.  (Dkt. entry no. 38, Def. Am. Ans. to 2d Am. Compl. at ¶¶ 154-66.)  Plaintiffs will be permitted to supplement their pleading after such time as the tonnage bonus becomes due to reflect whether nonpayment of the tonnage bonus occurs.

    **2.   Renewal Bonus**

The contract language covering the renewal bonus reserves discretion to GRH to accept or reject any proposed renewal contract insofar as the putative contract's "[t]erms . . . must be acceptable to the Company," and the Employment Agreements themselves do not require GRH to accept a contract negotiated on its behalf by Plaintiffs.  (See 3-31-11 Mem. Op. at 7; Employment Agreement at Section 3.1(d)(ii).)  Plaintiffs' pleadings concede that the contract renewal milestone was not achieved.  (2d Am. Compl. at ¶¶ 134, 165.)  Thus, Defendants contend that Plaintiffs cannot state a claim for breach of contract for Defendants' failure to pay that bonus, insofar as Plaintiffs failed to meet the condition precedent.

13

Plaintiffs respond that (1) they have pleaded that Defendants "arbitrarily, capriciously and unreasonably refused to execute the new five-year agreement" despite numerous efforts by the Plaintiffs to negotiate a renewal contract with terms acceptable to Defendants as contemplated by the Employment Agreements, and (2) the term "'<u>obtaining</u> a new contract with the County of Monmouth' which is 'acceptable to the Company'" is ambiguous, insofar as Plaintiffs contend that term can be reasonably understood to encompass their negotiations with the County, but Defendants contend must be understood to require that a contract actually have been "executed."  (Pl. Br. at 19-20; 2d Am. Compl. at ¶¶ 101-136, 165.)

Whether a contractual provision is ambiguous is a question of law for the Court, requiring the Court to consider, based on the plain language in the contract, whether it is subject to reasonable alternative interpretations. <u>Nye v. Ingersoll Rand Co.</u>, 783 F.Supp.2d 751, 759 (D.N.J. 2011).  Furthermore, "if the relevant terms in a contract are ambiguous, the issue must go to a jury." <u>Emerson Radio Corp. v. Orion Sales, Inc.</u>, 253 F.3d 159, 163 (3d Cir. 2001).  The Court finds that to the extent Plaintiffs allege a breach of the express terms of the renewal bonus, ambiguity of the contract language augurs against dismissal.  Specifically, we find that the term "[t]he obtaining of a new contract" in the renewal bonus language is ambiguous,

14

insofar as it is not clear whether it requires that a putative contract be actually executed by Defendants, or simply negotiated and presented to Defendants for their approval.  (Employment Agreement at Section 3.1(d)(ii).)  It is therefore plausible that the contract renewal negotiations detailed in Plaintiffs' pleading, paired with the allegations pertaining to Defendants' allegedly unreasonable rejection of the contract terms negotiated by Plaintiffs, state a claim for breach of contract with respect to the renewal bonus.  (2d Am. Compl. at ¶¶ 101-36, 165-66.)  See, e.g., Barton v. RCI, LLC, No. 10-3657, 2011 WL 3022238, at *8 (D.N.J. July 22, 2011) (allowing breach of contract claim to proceed based on finding that "confusion exists with respect to the application of the 'network integrity' clause").

    The Court further notes that it will not dismiss the breach of contract claim pertaining to the renewal contract bonus for lack of ripeness, for the same concerns of judicial efficiency discussed above with respect to the tonnage bonus claim.  The Court will therefore deny the motion to dismiss insofar as it seeks dismissal of the part of Count 2 pertaining to the renewal bonus.

**C.   Count 4 - Non-Competition Covenants**

    The Employment Agreements each contain a non-competition restrictive covenant precluding Plaintiffs from engaging in certain business practices for two years following the date of

15

termination.  (2d Am. Compl. at ¶ 24; Employment Agreement at Section 7.1.)  The Employment Agreements further provide that the "two-year Non-Competition Period may be extended by the Company for an additional year upon written notice given to Employee within 18 months following the date of termination and provided the Company continues payment to Employee of Base Salary" as set forth in the agreement.  (Employment Agreement at Section 7.4.)  Defendants contend that Count 4 is moot with respect to Straus, because the two-year non-compete period expired as of June 26, 2011.  (Def. Br. at 14.)  It appears to the Court that the two-year non-compete period expired as of June 21, 2012, with respect to Stanton.  (See 2d Am. Compl. at ¶ 74.)

Plaintiffs state in their opposition that they would agree that Straus's covenant not to compete is moot in this action if Defendants conceded that "(1) the non-compete covenant has expired, and (2) Straus' non-compete covenant cannot be extended by Defendants or other affiliates for any reason."  (Pl. Br. at 22.)  Defendants conceded both of these points in their reply.  (Dkt. entry no. 41, Def. Reply Br. at 8.)  As a matter of law, a claim seeking a declaratory judgment providing relief from a contractual provision, court order, or the like, becomes moot when the provision expires by its own terms.  See Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 428 (3d Cir. 2003)

16

(citing Hodges v. Schlinkert Sports Assocs., 89 F.3d 310, 312 (6th Cir. 1996)).

The Court observes that to the extent Plaintiffs suggest that an actual claim or controversy may still exist due to the contractual provisions in the Employment Agreements permitting extension of the non-compete period, Plaintiffs have not alleged that Defendants have provided the notice contemplated in Section 7.4 of the Employment Agreements as a prerequisite to extending the non-compete period beyond a two-year term.  Thus, there appears to be no contractual basis on which Defendants could at this point invoke the 18-month extension of the non-compete period with respect to either plaintiff.  Were Defendants to attempt to invoke that extension, they would be estopped from doing so after making the representations discussed above.  (Def. Reply Br. at 8; Pl. Br. at 22.)

We therefore find that the validity or enforceability of the Non-Competition Covenants, insofar as they have expired on their own terms with respect to both Plaintiffs, presents no live case or controversy over which the Court could exercise its jurisdiction.  The Non-Competition Covenant in Straus's Employment Agreement is no longer enforceable on its own terms, and Count 4, seeking a declaratory judgment, is moot as to Straus.  Cf. Cinicola, 248 F.3d at 119 (holding physicians' claims not constitutionally moot where potential contractual

17

obligations remained).  The Court finds no basis for concluding that the same reasoning would not now apply to Stanton as well, and therefore sua sponte finds that Count 4 is moot as to Stanton.  Count 4 will be dismissed with prejudice in its entirety.

## CONCLUSION

For the reasons discussed supra, the Court will deny the motion with respect to Count 1 and Count 2, and grant the motion with respect to Count 4.  The Court will further dismiss Count 4 with respect to Stanton.  The Court will issue an appropriate Order.

    s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

Dated:    August 2, 2012